UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SANDRA LOVELACE and STEPHEN LOVELACE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No.: |
| WASHINGTON UNIVERSITY SCHOOL OF MEDICINE Serve: Bob Barczewski, Director of Business Operations 4990 Children's Place Northwest Tower, 14th Floor St. Louis, MO 63110 and | ) ) ) **PLAINTIFFS DEMAND TRIAL** ) **BY JURY** ) ) ) ) ) ) |
| BARNES-JEWISH HOSPITAL Serve: Angela Standish, Registered Agent 4901 Forest Park Avenue, Suite 1140 St. Louis, MO 63108 | ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

JURISDICTION AND VENUE

1.     Count I of this action is brought under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. against Defendant Washington University School of Medicine (hereinafter "Washington University"). The Court has jurisdiction over Count I pursuant to 42 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Count II of this action is a state law claim under the Missouri Human Rights Act ("MHRA"), RSMo. § 213.010 et seq. against Defendant Washington University. Count III is the Missouri common law tort of tortious interference with business expectancy against Defendant Barnes-Jewish Hospital. Count IV is

the Missouri common law claim of defamation against Defendant Barnes-Jewish Hospital. Counts V and VI against Defendant Barnes-Jewish Hospital, which are pled in the alternative to Counts III and IV, are identical to Counts I and II, and premised upon Defendant Barnes-Jewish Hospital's potential status as a joint employer. Count VII is the Missouri common law claim of loss of consortium against both Defendants. The Court has supplemental jurisdiction over Counts II through IV, VI and VII pursuant to 28 U.S.C. § 1367.

2.      Venue is proper before this Court as the unlawful acts committed occurred in St. Louis City, State of Missouri. (28 U.S.C. Section 1391).

PARTIES

3.      Plaintiffs Sandra Lovelace and Stephen Lovelace are citizens of the United States and residents of St. Charles County, Missouri. They are husband and wife, and have been married since April 2, 1983.

4.      Defendant Washington University School of Medicine is a private health care employer of the State of Missouri located in St. Louis City, Missouri. Defendant Washington University School of Medicine at all times herein had taken its actions against Plaintiff Sandra Lovelace through agents and employees acting within the scope and course of their employment.

5.      Defendant Barnes-Jewish Hospital is a private health care employer of the State of Missouri located in St. Louis City, Missouri. Defendant Barnes-Jewish Hospital at all times herein had taken its actions against Plaintiff Sandra Lovelace through agents and employees acting within the scope and course of their employment, principally registered nurse, Paula Goldberg.

FACTS COMMON TO ALL COUNTS

6.    Plaintiff Sandra Lovelace began employment with Washington University School of Medicine in the division of oncology, Siteman Cancer Center, on November 24, 2003. She was hired as a medical assistant, level 2 (MA II), and was quickly promoted to MA III. Her employment was terminated on August 5, 2015.

7.    Throughout Plaintiff's employment, her job duties involved working with various physicians on their medical teams. The teams are designated by the physician's name. On or about December 8, 2014, one of her supervisors, Paula Goldberg, assigned her to work on Dr. Adkins' team for a period of two (2) months. It was common knowledge that this was a difficult team to work with because of the disorganization within the office.

8.    On December 10, 2014, Plaintiff was unexpectedly required to take Family Medical Leave because of an injury to her lower back, and surgery was required. The FMLA leave was approved by her employer, Washington University.

9.    Another medical assistant was hired specifically for working on the Dr. Adkins' team in her absence. Her name is Angie Butcher. Angie is African-American.

10.    On or about March 4, 2015, Plaintiff returned from her FMLA leave, and Paula Goldberg immediately assigned her to work on the Adkins' team for six (6) weeks, removing Angie Butcher from the Adkins' team that she was specifically hired for. Plaintiff did work the six (6) weeks on the Adkins' team.

11.    On March 30, 2015, Plaintiff's personal physician gave her a written accommodation memo to be given to her employer as a follow-up to surgery and FMLA leave. The letter stated:

"The patient, SANDRA LOVELACE, was seen in our office today for an appointment.  Please excuse her from work today.  SANDRA LOVELACE will be returning to work on Monday, March 30, 2015 with the following restriction: Please allow Ms. Lovelace to get up to stretch, stand, or walk for 5-10 minutes every 1-2 hours to alleviate pain and stiffness."

12.     Paula Goldberg was aware of these accommodations because Plaintiff had given it to her.

13.     From the time of Plaintiff's return from FMLA, Paula Goldberg made numerous statements that indicated she was upset with the FMLA leave Plaintiff had taken.

14.     In April 2015, Plaintiff had her performance appraisal review with Paula Goldberg.  Ms. Goldberg spent the entire time talking about Plaintiff's FMLA.  Ms. Goldberg characterized Plaintiff's surgery as a "procedure", and Plaintiff would correct her that it was "surgery".   Plaintiff showed her surgical scar to demonstrate what had happened.   In one conversation, Ms. Goldberg asked Plaintiff how things were going and Plaintiff told her that it's been a little rough getting back into a routine.  Ms. Goldberg responded, "Well, you have missed a lot of work."  Plaintiff told her she knew that, but she couldn't help it, she was in a lot of pain.  Ms. Goldberg then said, "Yeah, why did it take so long to have your procedure, you didn't have anything done until the end of your leave."  Plaintiff explained that it was a process – physical therapy, acupuncture, MRI, insurance clearance, etc.  Plaintiff told Ms. Goldberg that her medical bills exceeded $30,000.00, and Ms. Goldberg said, "It couldn't have been that much."  Ms. Goldberg mentioned in Plaintiff's performance evaluation that it was "convenient" that Plaintiff had so much sick time saved up that she did not need to touch her vacation while on FMLA, saying, "Well, that worked out for you."  Ms. Goldberg also stated, "You disappear all the time, where do you go?"  Plaintiff then reminded Ms. Goldberg of her physician's instructions to accommodate her surgery recovery.

4

15.     Plaintiff had also brought up an issue regarding team assignments before she went on her FMLA leave, reminding Ms. Goldberg that she was supposed to be assigned to Dr. Singh's team on a permanent basis. Ms. Goldberg's response was, "That will never happen."

16.     On or about May 15, 2015, Plaintiff went to Bob Barczewski, the director of operations for Defendant Washington University, to report the treatment of Paula Goldberg toward her. Plaintiff asked him if she should report it to human resources. Mr. Barczewski then asked Plaintiff, "Have you ever met Sandra Sledge? She's not going to do anything." Sandra Sledge is a human resource employee of Defendant Washington University.

17.     Separately, on July 2, 2015, Plaintiff applied for a permanent open position of MA III on Dr. Lockhart's team via email to Paula Goldberg, copying Dr. Lockhart on that email. Dr. Lockhart responded eight (8) minutes later to Paula Goldberg saying he wanted Plaintiff to fill that position. Paula Goldberg ignored Plaintiff's application and Dr. Lockhart's request.

18.     All of Paula Goldberg's statements and actions, up to this point in time, made Plaintiff believe she was being retaliated against for taking FMLA leave, and for making requests for reasonable accommodations of her disability.

19.     On Thursday, July 9, 2015, Plaintiff was assigned to work on the Dr. Brian Van Tine team. On that date, aside from Plaintiff, the following people were working: (1) Dr. Brian Van Tine, (2) Georgia Knapp-Maloney, (3) Jenny Spann, (4) Jim Weischeimer, (5) study coordinator – Cheryl Vinson, and (6) Natalie Taylor. Plaintiff discovered during the course of that day, Dr. Van Tine had asked Georgia Knapp-Maloney what her opinions were on him potentially hiring Angie Butcher, (the African-American medical assistant released from Dr. Adkins team when Plaintiff returned from FMLA). Ms. Knapp-Maloney took Dr. Van Tine into the hallway to discuss it. She said Angie would not be a good fit because she had been released

from Adkins' team for problems on that team. Jenny Spann overheard part of that conversation. Plaintiff was not present and did not hear or witness any of those conversations.

20.     On Monday, July 13, 2015, Plaintiff received an email from Paula Goldberg saying that she needed to meet with her, and her other supervisor, Dee Brinkley. The email said Plaintiff was to meet them at 3:00 p.m. that day because of "some issues that have come to our attention". Plaintiff did meet them at 3:00 p.m. When Plaintiff asked why they were meeting, they responded that she had made racial statements on Thursday working on Dr. Van Tine's team. They said they had been told that Plaintiff yelled, "Don't hire Angie Butcher because she doesn't like to work with white people." Plaintiff was completely shocked and horrified. Plaintiff asked them who told them that she said that, and Paula responded that it was Dr. Van Tine. Plaintiff asked for human resources to be brought into the room. Her request was denied. Plaintiff also asked for Dr. Van Tine to be brought into the room, and that was denied. Plaintiff was then given a verbal disciplinary warning.

21.     Plaintiff was crying during that meeting and leaving that meeting. She went immediately to her desk and emailed Sandra Sledge at human resources requesting a meeting as quick as possible. Plaintiff then left for home, still in tears.

22.     Plaintiff is Caucasian. Paula Goldberg is Caucasian. Dee Brinkley is African-American, as was Angie Butcher. Plaintiff did not make the racial statement which Paula Goldberg and Dee Brinkley accused her of. Plaintiff called Georgia Knapp-Maloney, Dr. Van Tine's nurse from her car on her way home, and told her what I had been accused of. Ms. Knapp-Maloney said, "Oh my God ~ why don't you call Brian (Van Tine)," and she gave her his cell phone number. Plaintiff then called Dr. Van Tine, and he told her he never said anything

like that. In addition, he knows Plaintiff did not give him any input as to whether he hired Angie Butcher or not. It was Georgia Knapp-Maloney who made that recommendation.

23.     Paula Goldberg or Dee Brinkley had apparently given Dr. Van Tine the resume of Angie Butcher. He then returned it to either Goldberg or Brinkley saying that he did not want Angie Butcher assigned to his team.

24.     Plaintiff knew she was being targeted for some type of disciplinary action, which is why she emailed Sandra Sledge after the meeting. The next day, she met Plaintiff at 3:30 p.m. When Plaintiff met Ms. Sledge, she told her what had happened – that she was being falsely accused as a racist, and that she believed this was happening in retaliation for her taking FMLA leave and the request for accommodations following her surgery. Sandra Sledge is African-American. She took Plaintiff's information and said she would do an investigation. On July 21, 2015, Plaintiff met with her again and said that she was being retaliated against regarding the FMLA leave and that she reported being falsely accused of racism.

25.     Plaintiff did not believe Sandra Sledge was going to do a proper investigation from her behavior in the meeting with her, so on July 24, 2015, Plaintiff went to the Defendant Washington University's human resources manager, Leanne Stewart. Plaintiff told her that she wanted to make a formal complaint regarding everything that she had told to Sandra Sledge. Ms. Stewart took notes and said her notes would be a formal complaint.

26.     On July 31, 2015, Plaintiff was summoned to meet with Sandra Sledge and Dee Brinkley, and she was told by them that they wanted to discuss Plaintiff's reports of retaliation and discrimination that she made to HR. That meeting quickly deteriorated into unfounded accusations that Plaintiff was not performing her job duties. Sandra Sledge told Plaintiff that she could leave work early again because she was emotionally distraught from those ridiculous

claims. Plaintiff immediately called Leanne Stewart's phone and got a recording that she was on vacation, and to call James Gebken, HR specialist, in her absence. Plaintiff then called Mr. Gebken and reported what had occurred in the meeting.

27.     On Sunday, August 2, 2015, Plaintiff received a phone call from Bob Barczewski saying she was placed on administrative leave immediately. Because of that, Plaintiff did not go to work on Monday, Tuesday or Wednesday. On Tuesday, August 4, 2015, Plaintiff was sent a letter from Leanne Stewart, the head of Defendant Washington University's human resources, acknowledging that she received Plaintiff's complaints of race discrimination, but that Paula Goldberg and Dee Brinkley had told her it was true. Had Stewart, or anyone else, simply checked with Dr. Van Tine or Georgia Knapp-Maloney, they would have easily discovered that the accusation was a complete lie.

28.     On Wednesday, August 5, 2015, the Defendant Washington University's director of operations sent Plaintiff a letter saying her employment was terminated for her conduct that occurred during the meeting of July 31, 2015 – crying and leaving work early because Plaintiff was labeled a racist.

29.     Plaintiff's career is now permanently ruined. Any future employer will have to be told Plaintiff was discharged from one of the most prestigious hospitals in the entire country because they said she was a racist.

<u>Exhaustion of Administrative Requirements under the Missouri Human Rights Act</u>

30.     On September 11, 2015, Plaintiff Sandra Lovelace filed an Amended Charge of Discrimination with the Missouri Commission on Human Rights against both Defendants as joint employers. It was assigned Charge No. E-08/15-45728. (Exhibit 1, attached hereto). The

8

Charge alleged retaliation for complaints regarding FMLA leave and disability accommodation, in addition to, retaliation for reporting race discrimination.

31.     On October 26, 2015, the Missouri Commission on Human Rights issued its Notice of Right to Sue and Plaintiff has filed this action within ninety (90) days of its issuance. (Exhibit 2, attached hereto).

## COUNT I
## Retaliation – Violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.
### (Plaintiff Sandra Lovelace against Defendant Washington University ONLY)

32.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

33.     Between December 10, 2014 and March 4, 2015, Plaintiff Sandra Lovelace was a qualified "eligible employee" under the Family Medical Leave Act of 1993, 29 U.S.C. § 2611(2). During the same period of time she was approved by Defendant for Family Medical Leave.

34.     Upon returning from her FMLA leave, Plaintiff was retaliated against by Defendant Washington University by disallowing work positions with Dr. Singh and Dr. Lockhart, and eventually discharging her from employment on August 5, 2015 under the false pretext that she was a racist.

35.     Defendant Washington University's retaliatory conduct was a violation of the Family Medical Leave Act of 1993.

36.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and benefits of employment, is entitled to interest on those amounts, and entitled to liquidated/double damages as Defendant's conduct was not in good faith.  Further, Plaintiff seeks attorney's fees and costs of this action pursuant to 29 U.S.C. § 2617(a)(1)-(3).

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Washington University for lost wages and benefits of employment, interest on those amounts, and liquidated/double damages. Further, Plaintiff seeks attorney's fees and costs of this action pursuant to 29 U.S.C. § 2617(a)(1)-(3).

## COUNT II
### Retaliation – Violation of the Missouri Human Rights Act, RSMo. § 213.010 et seq.
### (Plaintiff Sandra Lovelace against Defendant Washington University ONLY)

37.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

38.     On July 21, 2015, July 24, 2015 and July 31, 2015, Plaintiff made complaints to the human resource personnel that she was being retaliated against for reporting race discrimination and disability accommodations after returning from her Family Medical Leave.

39.     On August 5, 2015, Plaintiff was discharged from her employment, and her complaints of retaliation were a contributing factor in the decision to discharge her in violation of the Missouri Human Rights Act, RSMo. § 213.010 et seq.

40.     As a direct and proximate result of the Defendant's conduct, Plaintiff Sandra Lovelace suffered extreme embarrassment, personal humiliation, outrage, mental and emotional distress; lost wages and benefits of employment; and now the costs of this action.

41.     The actions of the Defendant were intentional, malicious and committed with deliberate indifference to, and reckless disregard for, the rights of Plaintiff, entitling Plaintiff to punitive damages against the Defendant Washington University.

42.     Plaintiff is further entitled to recover her reasonable attorney's fees pursuant to RSMo. § 213.010 et seq.

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Washington University for lost wages and benefits of employment, compensatory damages for mental and emotional distress, punitive damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

### COUNT III
### Tortious Interference with Business Expectancy
### (Plaintiff Sandra Lovelace against Defendant Barnes-Jewish Hospital ONLY)

43.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

44.     Defendant Barnes-Jewish Hospital was the employer of Paula Goldberg. Although Paula Goldberg was Plaintiff's immediate supervisor, controlling Plaintiff's work assignments and evaluating her performance appraisals, she could not discipline or discharge Plaintiff from her employment.

45.     Paula Goldberg falsely accused Plaintiff Sandra Lovelace of making racial comments, labeling her a racist, and publishing those statements to employees of Washington University.

46.     Defendant Washington University managers and human resource employees accepted as true those false accusations.

47.     The false accusations of Paula Goldberg were deliberate lies which were intended to, and did, cause Plaintiff Sandra Lovelace to be discharged from her place of employment. Paula Goldberg had no legal justification to make such deliberate lies.

48.     As a direct and proximate result of the Defendant's conduct, Plaintiff Sandra Lovelace suffered extreme embarrassment, personal humiliation, outrage, mental and emotional distress; lost wages and benefits of employment; and now the costs of this action.

49.    The actions of the Defendant were intentional, malicious and committed with deliberate indifference to, and reckless disregard for, the rights of Plaintiff, entitling Plaintiff to punitive damages against the Defendant Barnes-Jewish Hospital.

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Barnes-Jewish Hospital for lost wages and benefits of employment, compensatory damages for mental and emotional distress, punitive damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT IV
### Defamation
**(Plaintiff Sandra Lovelace against Defendant Barnes-Jewish Hospital ONLY)**

50.    Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

51.    Paula Goldberg, as an agent and employee of Defendant Barnes-Jewish Hospital, made statements to the managers and human resource employees of Defendant Washington University that Plaintiff Sandra Lovelace was a racist.

52.    The statements by Paula Goldberg were made either negligently, intentionally or recklessly with the specific purpose to cause Plaintiff's termination from employment.

53.    The statements made by Paula Goldberg were accepted by Dee Brinkley, Sandra Sledge and Leanne Stewart, as true, thereby causing Plaintiff to be discharged from her employment.

54.    As a direct and proximate result of the Defendant's conduct, Plaintiff Sandra Lovelace suffered extraordinary damage to reputation, extreme embarrassment, personal humiliation, outrage, mental and emotional distress; lost wages and benefits of employment; and now the costs of this action.

55.     The actions of the Defendant were intentional, malicious and committed with deliberate indifference to, and reckless disregard for, the rights of Plaintiff, entitling Plaintiff to punitive damages against the Defendant Barnes-Jewish Hospital.

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Barnes-Jewish Hospital for lost wages and benefits of employment, compensatory damages for mental and emotional distress, punitive damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT V
### In the Alternative to Counts III and IV
### Retaliation – Violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.
### (Plaintiff Sandra Lovelace against Defendant Barnes-Jewish Hospital ONLY)

56.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

57.     Between December 10, 2014 and March 4, 2015, Plaintiff Sandra Lovelace was a qualified "eligible employee" under the Family Medical Leave Act of 1993, 29 U.S.C. § 2611(2). During the same period of time she was approved for Family Medical Leave. Defendant Barnes-Jewish Hospital was a joint employer of Plaintiff Sandra Lovelace.

58.     Upon returning from her FMLA leave, Plaintiff was retaliated against by Defendant Barnes-Jewish Hospital employee and manager, Paula Goldberg, in that she disallowed work positions with Dr. Singh and Dr. Lockhart, and eventually discharged Plaintiff from her employment on August 5, 2015 under the false pretext that she was a racist. Paula Goldberg had been delegated the authority and influence to cause Plaintiff's discharge by Washington University, making Barnes-Jewish Hospital a joint employer.

59.     Defendant Barnes-Jewish Hospital's retaliatory conduct is a violation of the Family Medical Leave Act of 1993.

60.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and benefits of employment, is entitled to interest on those amounts, and entitled to liquidated/double damages as Defendant's conduct was not in good faith.  Further, Plaintiff seeks attorney's fees and costs of this action pursuant to 29 U.S.C. § 2617(a)(1)-(3).

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Barnes-Jewish Hospital for lost wages and benefits of employment, interest on those amounts, and liquidated/double damages.  Further, Plaintiff seeks attorney's fees and costs of this action pursuant to 29 U.S.C. § 2617(a)(1)-(3).

## COUNT VI
### *In the Alternative to Counts III and IV*
### Retaliation – Violation of the Missouri Human Rights Act, RSMo. § 213.010 et seq.
### (Plaintiff Sandra Lovelace against Defendant Barnes-Jewish Hospital ONLY)

61.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, 57 and 58, as though fully set forth herein.

62.     On July 21, 2015, July 24, 2015 and July 31, 2015, Plaintiff made complaints to the human resource personnel that she was being retaliated against for reporting race discrimination and disability accommodations after returning from her Family Medical Leave. Defendant Barnes-Jewish Hospital was a joint employer of Plaintiff Sandra Lovelace.

63.     On August 5, 2015, Plaintiff was discharged from her employment, and her complaints of retaliation were a contributing factor in the decision to discharge her in violation of the Missouri Human Rights Act, RSMo. § 213.010 et seq.

64.     As a direct and proximate result of the Defendant's conduct, Plaintiff Sandra Lovelace suffered extreme embarrassment, personal humiliation, outrage, mental and emotional distress; lost wages and benefits of employment; and now the costs of this action.

65.     The actions of the Defendant were intentional, malicious and committed with deliberate indifference to, and reckless disregard for, the rights of Plaintiff, entitling Plaintiff to punitive damages against the Defendant Barnes-Jewish Hospital.

66.     Plaintiff is further entitled to recover her reasonable attorney's fees pursuant to RSMo. § 213.010 et seq.

WHEREFORE, Plaintiff Sandra Lovelace prays for judgment against Defendant Barnes-Jewish Hospital for lost wages and benefits of employment, compensatory damages for mental and emotional distress, punitive damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

### COUNT VII
### Loss of Consortium
### (Plaintiff Stephen Lovelace against Both Defendants)

67.     Plaintiff hereby incorporates by reference paragraphs 1 – 31, as though fully set forth herein.

68.     As a direct and proximate result of the acts and conduct of Defendants toward Plaintiff Sandra Lovelace, Plaintiff Stephen Lovelace was caused to sustain the loss of consortium, society, love, affection and companionship he previously enjoyed with his spouse, Plaintiff Sandra Lovelace.

WHEREFORE, Plaintiff Stephen Lovelace prays for judgment against Defendants for compensatory damages, costs of this action, and such other and further relief as this Court deem just and proper in the premises.

Respectfully submitted,
THE BAGSBY LAW FIRM


/s/    Larry A. Bagsby
Larry A. Bagsby, #37296
*Attorney for Plaintiffs*
125 North Main Street, Suite 204
St. Charles, MO  63301
(636) 244-5595 telephone
(636) 244-5596 facsimile

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
COMMISSION ON HUMAN RIGHTS

## CHARGE OF DISCRIMINATION

*AMENDED*

Enter Charge Number

☐ FEPA   E-08/15 -45728

☐ EEOC

*This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.*

### Missouri Commission on Human Rights and EEOC

| Name (Indicate Mr., Ms., or Mrs.) Mrs. Sandra Lovelace c/o The Bagsby Law Firm | Date of Birth 02-17-1962 | Home Telephone No. (Include Area Code) 636-244-5595 |
|---|---|---|
| Street Address 125 North Main Street, Suite 204 | City, State and Zip Code St. Charles, MO 63301 | County St. Charles |

### Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship, Committee, State or Local Government Agency who discriminated against me *(if more than one list below)*.

| Name Washington University School of Medicine | No. of Employees/Members 15+ | Telephone No. *(Include Area Code)* 314-747-1171 |
|---|---|---|
| Street Address 660 South Euclid | City, State, and ZIP Code St. Louis, MO 63110 | |
| Name Barnes-Jewish Hospital, Attn: HR: Mail Stop 90-23-326 | No. of Employees/Members 15+ | Telephone No. *(Include Area Code)* 314-747-3000 |
| Street Address One Barnes Hospital Plaza | City, State, and ZIP Code St. Louis, MO 63110 | |

| Cause of Discrimination based on *(Check appropriate box(es))* | Date Discrimination took Place *(Month, Day, Year)* |
|---|---|
| ☒ Race   ☐ Color   ☐ Sex<br>☐ National Origin   ☐ Religion   ☐ Age<br>☒ Disability   ☒ Retaliation   ☐ Other *(Specify)* | 03-04-15 to 08-05-15<br><br>☐ Continuing Action |

The Particulars Are *(If additional space is needed, attach extra sheet(s)):*

I began employment with Washington University School of Medicine and Barnes-Jewish Hospital in the division of oncology, Siteman Cancer Center, on November 24, 2003. I was hired as a medical assistant, level 2 (MA II), and was quickly promoted to MA III. My employment was terminated on August 5, 2015. Both Washington University and Barne-Jewish employees, managers and supervisors controlled the terms and conditions of my employment. They were joint employers.

### I. Disability Discrimination – Reasonable Accommodation / Retaliation

Throughout my employment, my job duties involved working with various physicians on their medical teams. The teams are designated by the physician's name. On or about December 8, 2014, one of my supervisors, Paula Goldberg, assigned me to work on Dr. Adkins' team for a period of two (2) months. It was common knowledge that this was a difficult team to work with because of the disorganization within the office.

On December 10, 2014, I was unexpectedly required to take Family Medical Leave because of an injury to my lower back, and surgery was required. The FMLA leave was approved.

Another medical assistant was hired specifically for working on the Dr. Adkins' team in my absence. Her name is Angie Butcher. Angie is African-American.

On or about March 4, 2015, I returned from my FMLA leave, and Paula Goldberg immediately assigned me to work on the Adkins' team for six (6) weeks, removing Angie Butcher from the Adkins' team that she was specifically hired for. I did work the six (6) weeks on the Adkins' team.

| ☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *(When necessary to meet State and Local Requirements)*<br><br>*Sherry Budd*<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>x *[signature]*   9/11/15<br>Charging Party (Signature)   Date | *[signature]*<br>Signature of Complainant<br><br>Subscribed and sworn to before me this date *(Day, month, and Year)*<br>11th day of September 2015 |

PLAINTIFF'S
EXHIBIT
1

SHERRY BUDD
Notary Public - Notary Seal
State of Missouri, St Charles County
Commission # 13530785
My Commission Expires Aug 14, 2017

MCHR-27 (08-11) AI

On March 30, 2015, my personal physician gave me a written accommodation memo to be given to my employer as a follow-up to my surgery and FMLA leave. The letter stated:

"The patient, SANDRA LOVELACE, was seen in our office today for an appointment. Please excuse her from work today. SANDRA LOVELACE will be returning to work on Monday, March 30, 2015 with the following restriction: Please allow Ms. Lovelace to get up to stretch, stand, or walk for 5-10 minutes every 1-2 hours to alleviate pain and stiffness."

Paula Goldberg was aware of these accommodations because I had given it to her.

From the time of my return from FMLA, Paula Goldberg made numerous statements that indicated she was upset with the FMLA leave I had taken. In April 2015, I had my performance appraisal review with Paula Goldberg. She spent the entire time talking about my FMLA. She characterized my surgery as a "procedure", and I would correct her that it was "surgery". I showed her my surgical scar to demonstrate what had happened. In one conversation, she asked me how things were going and I told her that it's been a little rough getting back into a routine. She responded, "Well, you have missed a lot of work." I told her I knew that, but I couldn't help it, I was in a lot of pain. She then said, "Yeah, why did it take so long to have your procedure, you didn't have anything done until the end of your leave." I explained that it was a process – physical therapy, acupuncture, MRI, insurance clearance, etc. I told her my medical bills exceeded $30,000.00, and she said, "It couldn't have been that much." She mentioned in my performance evaluation that it was "convenient" that I had so much sick time saved up that I did not need to touch my vacation while on FMLA, saying, "Well, that worked out for you." She also stated, "You disappear all the time, where do you go?" I then reminded her of my physician's instructions to accommodate my surgery recovery.

I had also brought up an issue regarding team assignments before I went on my FMLA leave, reminding her that I was supposed to be assigned to Dr. Singh's team on a permanent basis. Her response was, "That will never happen."

On or about May 15, 2015, I went to Bob Barczewski, the director of operations, to report the treatment of Paula Goldberg toward me. I asked him if I should report it to human resources. He then asked me, "Have you ever met Sandra Sledge? She's not going to do anything." Sandra Sledge is a human resource employee.

Separately, on July 2, 2015, I applied for a permanent open position of MA III on Dr. Lockhart's team via email to Paula Goldberg, copying Dr. Lockhart on that email. Dr. Lockhart responded eight (8) minutes later to Paula Goldberg saying he wanted me to fill that position. Paula Goldberg ignored my application and Dr. Lockhart's request.

All of Paula Goldberg's statements and actions, up to this point in time, made me believe I was being retaliated against for taking FMLA leave, and for making requests for reasonable accommodations of my disability.

II. Race Discrimination / Retaliation

On Thursday, July 9, 2015, I was assigned to work on the Dr. Brian Van Tine team. On that date, aside from me, the following people were working: (1) Dr. Brian Van Tine, (2) Georgia Knapp-Maloney, (3) Jenny Spann, (4) Jim Weischeimer, (5) study coordinator – Cheryl LNU, and (6) Natalie Taylor. I discovered during the course of that day, Dr. Van Tine had asked Georgia Knapp-Maloney what her opinions were on him potentially hiring Angie Butcher, (the African-American medical assistant released from Dr. Adkins team when I returned from FMLA). Ms. Knapp-Maloney took Dr. Van Tine into the hallway to discuss it. She said Angie would not be a good fit because she had been released from Adkins' team for problems on that team. Jenny Spann overheard part of that conversation. I was not present and did not hear or witness any of those conversations.

| ☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – (When necessary to meet State and Local Requirements) |
| --- | --- |
| | _Sherry Budd_ |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |
| X _[signature]_                                    9/11/15 | X _[signature]_ |
| Charging Party (Signature)                    Date | Signature of Complainant |
| | 11th day of September, 2015 |
| | Subscribed and sworn to before me this date (Day, month, and Year) |

SHERRY BUDD
Notary Public - Notary Seal
State of Missouri, St. Charles County
Commission # 13530785
My Commission Expires Aug 14, 2017

MCHR-27-2 (08-11) AI

On Monday, July 13, 2015, I received an email from Paula Goldberg saying that she needed to meet with me, and my other supervisor, Dee Brinkley. The email said I was to meet them at 3:00 p.m. that day because of "some issues that have come to our attention". I did meet them at 3:00 p.m. When I asked why we were meeting, they responded that I had made racial statements on Friday working on Dr. Van Tine's team. They said they had been told that I yelled, "Don't hire Angie Butcher because she does not like to work with white people." I was completely shocked and horrified. I asked them who told them that I said that, and Paula responded that it was Dr. Van Tine. I asked for human resources to be brought into the room. My request was denied. I also asked for Dr. Van Tine to be brought into the room, and that was denied. I was then given a verbal disciplinary warning. I was crying during that meeting and leaving that meeting. I went immediately to my desk and emailed Sandra Sledge at human resources requesting a meeting as quick as possible. I then left for home, still in tears.

I am Caucasian. Paula Goldberg is Caucasian. Dee Brinkley is African-American, as was Angie Butcher. I did not make that statement. I called Georgia Knapp-Maloney, Dr. Van Tine's nurse from my car on my way home, and told her what I had been accused of. She said, "Oh my God ~ why don't you call Brian (Van Tine)," and she gave me his cell phone number. I then called him, and he told me he never said anything like that. In addition, he knows I did not give him any input as to whether he hired Angie Butcher or not. It was Georgia Knapp-Maloney who made that recommendation.

Paula Goldberg or Dee Brinkley had apparently given Dr. Van Tine the resume of Angie Butcher. He then returned it to either Goldberg or Brinkley saying that he did not want Angie Butcher assigned to his team.

I knew I was being targeted for some type of disciplinary action, which is why I emailed Sandra Sledge after the meeting. The next day, she met me at 3:30 p.m. When I met her, I told her what had happened, that I was being falsely accused as a racist, and that I believed this was happening in retaliation for me taking FMLA leave. Sandra Sledge is African-American. She took my information and said she would do an investigation. On July 21, 2015, I met with her again and said that I am being retaliated against regarding the FMLA leave and falsely accused of racism.

I did not believe Sandra Sledge was going to do a proper investigation from her behavior in my meeting with her, so on July 24, 2015, I went to the human resources manager, Leanne Stewart. I told her that I wanted to make a formal complaint regarding everything that I had told to Sandra Sledge. Ms. Stewart took notes and said her notes would be a formal complaint.

On July 31, 2015, I was summoned to meet with Sandra Sledge and Dee Brinkley, and I was told they wanted to discuss my reports of retaliation and discrimination that I made to HR. That meeting quickly deteriorated into unfounded accusations that I was not performing my job duties. Sandra Sledge told me that I could leave work early again because I was emotionally distraught from those ridiculous claims. I immediately called Leanne Stewart's phone and got a recording that she was on vacation, and to call James Gebken, HR specialist, in her absence. I then called Mr. Gebken and reported what had occurred in the meeting.

On Sunday, August 2, 2015, I received an email from Bob Barczewski saying I was placed on administrative leave immediately. Because of that, I did not go to work on Monday, Tuesday or Wednesday. On Tuesday, August 4, 2015, I was sent a letter from Leanne Stewart, the head of human resources, acknowledging that she received my complaints of race discrimination, but that Paula Goldberg and Dee Brinkley had told her it was true. Had Stewart, or anyone else, simply checked with Dr. Van Tine or Georgia Knapp-Maloney, they would have easily discovered that the accusation was a complete lie.

| ☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – (When necessary to meet State and Local Requirements) |
|---|---|
| | *Sherry Budd* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |
| X _____  9/11/15 | X _____ |
| Charging Party (Signature)           Date | Signature of Complainant |
| | 11th day of September 2015 |
| | Subscribed and sworn to before me this date (Day, month, and Year) |

SHERRY BUDD
Notary Public - Notary Seal
State of Missouri, St Charles County
Commission # 13530785
My Commission Expires Aug 14, 2017

MCHR-27-2 (08-11) AI

On Wednesday, August 5, 2015, the director of operations sent me a letter saying my employment was terminated for my conduct that occurred during the meeting of July 31, 2015 – crying and leaving work early because I was labeled a racist.

My career is now permanently ruined.  Any future employer will have to be told I was discharged from one of the most prestigious hospitals because they said I am a racist.

I have been discriminated against in violation of the Missouri Human Rights Act, RSMo. § 213.010 et seq. on the basis of my race, my request for accommodations to my disability, and for retaliation regarding both of those issues.  I am seeking compensatory damages, back pay and front pay, lost benefits of employment, i.e. health and life insurance, punitive damages and attorney's fees.

☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

X _Poll O. Fowlan_   9/11/15
Charging Party (Signature)        Date

**NOTARY –** (When necessary to meet State and Local Requirements)

_Sherry Budd_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

X _Poll A. Fowlan_
Signature of Complainant

11th day of September, 2015
Subscribed and sworn to before me this date (Day, month, and Year)

SHERRY BUDD
Notary Public - Notary Seal
State of Missouri, St Charles County
Commission # 13530785
My Commission Expires Aug 14, 2017

MCHR-27-2 (08-11)  AI

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS

# MISSOURI COMMISSION ON HUMAN RIGHTS

| JEREMIAH W. (JAY) NIXON | RYAN MCKENNA | SARA NELL LAMPE | ALISA WARREN, PH.D. |
|---|---|---|---|
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIRPERSON | EXECUTIVE DIRECTOR |

Sandra Lovelace
C/O The Bagsby Law Firm
125 N Main St Ste 204
Saint Charles, MO 63301

RE:     Sandra Lovelace vs. WASHINGTON UNIVERSITY SCHOOL OF MEDICINE
E-08/15-45728  28E-2015-01618C

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

You are hereby notified that you have the right to bring a civil action within 90 days of the date of this letter against the respondent(s) named in the complaint. Such an action may be brought in any state circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Not only must any action brought in court pursuant to this right to sue authorization be filed within 90 days from the date of this letter, any such case must also be filed **no later than two years after the alleged cause occurred** or your reasonable discovery of the alleged cause.

IF YOU DO NOT FILE A CIVIL ACTION IN STATE CIRCUIT COURT RELATING TO THE MATTERS ASSERTED IN YOUR COMPLAINT WITHIN 90 DAYS OF THE DATE OF THIS NOTICE (AND WITHIN TWO YEARS OF THE ALLEGED CAUSE, OR THE DISCOVERY OF THE ALLEGED CAUSE, OF YOUR COMPLAINT), YOUR RIGHT TO SUE IS LOST.

You are also notified that the Executive Director is administratively closing this case and terminating all MCHR proceedings relating to your complaint. You may not reinstate this complaint with the MCHR or file a new complaint with the MCHR relating to the same act or practice, but rather, if you choose to continue to pursue your complaint, you must do so in court as described in this letter. This notice of right to sue has no effect on the suit-filing period of any federal claims.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the circuit court of Cole County.

Respectfully,

Alisa Warren, Ph.D.                                                     October 26, 2015
Executive Director                                                      Date

C:      additional contacts listed on next page

PLAINTIFF'S
EXHIBIT
2

| ☒ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|
| 3315 W. TRUMAN BLVD.<br>P.O. BOX 1129<br>JEFFERSON CITY, MO 65102-1129<br>PHONE: 573-751-3325<br>FAX: 573-751-2905 | 111 N. 7TH STREET, SUITE 903<br>ST. LOUIS, MO 63101-2100<br>PHONE: 314-340-7590<br>FAX: 314-340-7238 | P.O. BOX 1300<br>OZARK, MO 65721-1300<br>FAX: 417-485-6024 | 1410 GENESSEE, SUITE 260<br>KANSAS CITY, MO 64102<br>FAX: 816-889-3582 | 106 ARTHUR STREET<br>SUITE D<br>SIKESTON, MO 63801-5454<br>FAX: 573-472-5321 |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights      E-Mail: mchr@labor.mo.gov

RE:    Sandra Lovelace vs. WASHINGTON UNIVERSITY SCHOOL OF MEDICINE
E-08/15-45728  28E-2015-01618C


WASHINGTON UNIVERSITY SCHOOL OF MEDICINE
660 South Euclid Avenue
Barnes Jewish Hospital
One Barnes Plaza Dr
Saint Louis, MO 63110

Christine M. Ramastoski, Associate General Counsel
BJC Healthcare
Ste 1140, Mail Stop 9075-573
4901 Forest Park Ave
St. Louis, MO 63108-1401

Larry Bagsby
Attorney at Law
125 N Main St Ste 204
Saint Charles, MO 63301